## INTERMOUNTAIN SPEEDWAYS, Inc., et al. v. INDUSTRIAL COMMISSION et al.

No. 6420.   Decided May 20, 1942.   (126 P. 2d 22.)

See 28 R. C. L. 761; 71 C. J. Workmen's Compensation, sec. 160.

*Frank Trottier,* of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., and *Stewart M. Hanson* and *Joseph R. Haas,* both of Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission to review an award granting to Henry Winters compensation as the wholly dependent father of Charles R. Winters who was killed while driving an automobile in the midget races at the State Fair Grounds on June 22, 1941.

The Commision held the deceased was an employee of the Intermountain Speedways at the time of the accident and that his father was wholly dependent upon his deceased son. Both of these findings are impugned by the State Insurance Fund and are here for review.

The evidence in which there are few conflicts is as follows: Intermountain Speedways Inc., is a Utah Corporation. It conducted midget auto races at the State Fair Grounds every Sunday and Wednesday evening. It made a general offer to the public to drive midget autos in each race. The inducements to compete were $2.50 for each race and a share in a certain percentage of the gate receipts set aside as prize money, the share depending upon the order in which the entrant finished in the race.

The entrant paid the expenses of maintaining, servicing and operating his own car. If he drove a car belonging to another the arrangement between the owner and driver was of no concern to Speedways. It dealt with the entrant. An entrant owner could drive his own car or engage someone else to drive it. An entrant driver could drive his own car or obtain a car from another. Speedways paid the driver $2.50 for each race if he brought out his car and placed it in the race. He was expected to go once around the track. The $2.50 was termed appearance money—this whether he won or lost. He was not required to make an application. If he presented himself and a car which was qualified and he himself was in fit condition and qualified to race he received the guarantee of $2.50 per race provided he actually participated in the race. Any other compensation came by virtue of his placing himself among the winners. He was not subject to call as a driver; he was not compelled to practice. He

engaged his own helpers—his own "pit crew" to service the car. If the driver was on hand at 8 o'clock when the races began and participated he could demand the guarantee of $2.50; otherwise not. Speedways had the absolute right to bar any driver from any race—to order him off the grounds for any reason it saw fit. It "supervised and controlled" the drivers insofar as it required them to obey certain regulations designed for the safety of contestants. It did not control the manner or method of driving except insofar as the instructions designed for safety regulate that driving. Each driver depended on his skill and dexterity in handling his car and the speed of which it was capable and which under the conditions of the race could be wrung out of it. Speedways employed its ticket sellers, gate tenders and employees who take care of the track. These employees were insured in the State Insurance Fund. Mr. Ralphs, Secretary-Treasurer of the Speedways, testified that the drivers were also insured in the State Insurance Fund. He could not tell how much insurance it was carrying on the drivers but thought that 23 or 24 were covered by insurance. He could not state the names of the drivers. The bookkeeper who had that information was not called.

Under the facts as above stated was the deceased an "employee" of Speedways as meant by the Workmen's Compensation Act? If he were not such, we need go no further to determine what his relationship really was.

Section 42-1-41, R. S. U. 1933, defines an "employee" as used in the act as any

"person * * * in the service of any 'employer' [as defined by and subject to the act] under any contract of hire, express or implied, oral or written * * * but not including any person whose employment is but casual," etc.

No point is made that Winter's employment was casual. The plaintiff takes the position that there was no employment. It will be noted that the definition of employment contained in the Workmen's Compensation Act is far dif-

ferent from that contained in the Unemployment Compensation Act. Laws 1936, Sp. Sess., c. 1, as amended by Laws 1939, c. 52. In the latter act Section 19 (j) (1), (p), states that

" 'employment' * * * means service * * * performed for wages or under any contract of hire, written or oral, express or implied,"

and "wages" are defined as

"all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash."

Thus, in the Unemployment Compensation Act one is in "employment" not only if he is under any contract of hire, express or implied as is the case in the Workmen's Compensation Act, but if he performs "personal services" for any remuneration. It is this latter provision which, as we stated in *Globe Grain & Milling Co.* v. *Industrial Commission of Utah*, 98 Utah 36, 91 P. 2d 512; *Creameries of America* v. *Industrial Commission of Utah*, 98 Utah 571, 102 P. 2d 300; *Salt Lake Tribune Pub. Co.* v. *Industrial Commission of Utah*, 99 Utah 259, 102 P. 2d 307; *National Tunnel & Mines Co.* v. *Industrial Commission of Utah*, 99 Utah 39, 102 P. 2d 508; *Fuller Brush Co.* v. *Industrial Commission of Utah*, 99 Utah 97, 104 P. 2d 201, 129 A. L. R. 511, brought in under the scope of the Unemployment Compensation Act service relationships other than that of master and servant. On the other hand the definition of "employee" set out in the Workmen's Compensation Act is more narrowly restricted, mainly to the relationship of master and servant as known to common law. *Stricker* v. *Industrial Commission of Utah*, 55 Utah 603, 188 P. 849, 19 A. L. R. 1159; *Angel* v. *Industrial Commission of Utah*, 64 Utah 105, 228 P. 509; *Stover Bedding Co.* v. *Industrial Commission of Utah*, 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006. "Servant" as meant in the common law took in not only the menial but agents with limited powers. In Vol.

XLI, page 1030, Columbia Law Review in an article entitled "Determination of Employer-Employee Relationships in Social Legislation" it was stated:

"* * * It can be said that the further the boundaries of independent contractorship are extended, the smaller will be the area of the employee field. This statement, though generally true, may, however, be an unwarranted oversimplification. It should be realized that, analytically speaking, there is, between the 'own business' area and the ordinary master-servant relationship, still another field: that of principal-agent relationships. The term 'employee' as used in social legislation covers strict master and servant contracts and overlaps the field of principal and agent. Agents whose discretion is not wide are thus termed employees, although the boundaries are difficult to determine."

Among the tests of servanthood was the method of payment, right to discharge, nature of work, whether for a definite piece of work but above all right to control as to means and method of performance. We have many recent affirmations of the control test, from those jurisdictions where unlike ours, the unemployment compensation acts by definition or by construction have held to cover only the well-known common law definitions of "employee." *In re Morton,* 284 N. Y. 167, 30 N. E. 2d 369; *Herndon et al.* v. *Halliburton Oil Well Cementing Co.,* Tex. Civ. App., 154 S. W. 2d 163; *In re Ten Eyck Co., Inc.,* D. C. N. Y., 41 F. Supp. 375; *In re Electrolux Corporation,* 262 App. Div. 642, 30 N. Y. S. 2d 972. We need not at this time pause to consider those cases where the claimant has been a necessary cog in an integrated business but right of control has been abstracted by contract where control would not in any case be practically enforced. Suffice it to say that deceased did not fall under that category.

Speedways had no right to control Winters as to the means or method of performing in the race. A professional ball player may be told from the bench what kind of a curve to throw or when to "come in close" or to try for a squeeze play, etc. He can be instructed as to how to use his skill in the performance of the play. There

are, of course, other reasons why he is an employee. In the instant case the "supervision and control" as used by Mr. Ralphs was only such as would be consistent with safety and fair play among contestnats. Such regulations or supervision, so-called, are not inconsistent even with independent contractorship. *Hill Hotel Co.* v. *Kinney,* 138 Neb. 760, 295 N. W. 397; *Brosius* v. *Orpheum Theater Co., Ltd.,* 16 Cal. App. 2d 61, 60 P. 2d 156; *In re Electrolux Corporation,* supra.

The deceased in this case did not bear the relation of employee to Intermountain Speedways. He was a contestant with other contestants. The $2.50 he received for participating in any race, barely sufficient to cover his expenses, was by way of inducing contestants to enter the races. The arrangement was one in which Intermountain Speedways operated a race track for the purpose of inducing entrants to contest, charging an admission to the races. The gate receipts furnished the contingent compensation for those who finished in a certain order and a profit to Speedways after payment of expenses of operation. The fact that Speedways may have covered these drivers with insurance on the supposition that they were employees may have been for reasons of caution or a mistaken idea that they were employees and the acceptance of premiums on the compensation paid contestants by the State Insurance Fund was not a binding admission that it considered them employees or an acceptance of their status as such. There is no showing that the Fund knew specifically that premiums were paid on money paid to drivers or that so knowing, it intended to insure the payment of compensation to such drivers regardless of their status.

Having decided that the deceased was not an employee within the meaning of the act, the question of whether the petitioner, his father, was wholly dependent falls out of the case.

The award of the Industrial Commission is set aside. It is so ordered.

McDONOUGH, J., and LEVERICH, District Judge, concur.

MOFFAT, C. J. and LARSON, J., dissenting.

PRATT, J., not participating.