290 P.2d 692

**Glen SPENCER, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION of Utah, American Foundry & Machine Co., and The State Insurance Fund, Defendants.**

No. 8363.

Supreme Court of Utah.

Nov. 25, 1955.

5. See Ray v. Consolidated Freightways, 4 Utah 2d 137, 289 P.2d 196, 201.

John L. Black, Salt Lake City, for plaintiff.

E. R. Callister, Jr., Atty. Gen., F. A. Trottier, Salt Lake City, for defendants.

CROCKETT, Justice.

Review of an order of the Industrial Commission denying a claim of Glen Spencer for a supplemental award for disability claimed to arise out of an industrial injury to his shoulder for which he received an award in 1941 and an allowance for medical care in 1944.

The original injury occurred June 10, 1941. Plaintiff was working for American Foundry and Machine Company at Salt Lake City when a milling screen and electric motor fell striking his left shoulder and neck; he was knocked unconscious and remained so until he woke up in the hospital. Based on this accident the Industrial Commission allowed him temporary total disability up to December 25, 1941. On December 19, 1941, he appeared before a medical advisory committee appointed by the Commission which determined that there was no permanent disability. Pursuant to a subsequent application for adjustment of claim, another hearing was held be-

fore the Commission on April 6, 1942. The claim for loss of bodily function was denied at that time. No appeal was taken from either of the above decisions.

On September 12, 1944, plaintiff filed application for additional compensation and for medical benefits. Upon hearing he was awarded further medical treatment but no compensation. The Commission's order read in part as follows:

"* * * applicant is not entitled to any compensation for either permanent partial disability or permanent total, prior to September 7, 1944. Neither does the testimony testify [sic] a finding that since September 7, 1944, applicant has been temporarily and totally disabled. Giving applicant the benefit of every reasonable doubt, he is entitled at most to receive medical treatment for a recurrence of a pain in the shoulder and treatment for contracture of the muscles if such condition is in fact found to exist.

"* * * the Commission finds that applicant, on or about September 7, 1944, suffered a recurrence of pain in the region of the 1941 injury, and a possible non-disabling contracture of the muscles of the shoulder and, therefore, we conclude that he is entitled to medical treatment as indicated by Dr. A. L. Huether, * * *"

which treatments were furnished him.

Commencing in January, 1949, and continuing to August, 1954, Mr. Spencer wrote the Commission intermittently seeking further medical attention but nothing was done in response thereto. On August 12, 1954, he filed an application seeking additional compensation for disability to his shoulder and arm. A further hearing was had after which the Commission again denied him the relief requested. It is this result he asks us to review.

The first obstacle in plaintiff's path is the insistence of counsel for the State Insurance Fund that under the facts here the plaintiff's claim is res judicata: that the Commission having thrice adjudicated Mr. Spencer's claim heretofore, and no appeal having been taken therefrom, his rights are thus concluded, and the Commission has no jurisdiction to again consider it. Counsel states the proposition thus: "The question is simply this, how many times can a man present the same claim to the Commission for determination?"

The concept upon which the Industrial Compensation Act is based represents a departure from the rules of common law in regard to compensation for injuries suffered in employment. Underlying the Act is the idea that industry should bear its fair share of the burdens it creates through injuries to those who serve in it, regardless of who was at fault in causing them.[1] Its objective is to alleviate hard-

1. United Air Lines Transport Corp. v. Industrial Comm., 107 Utah 52, 151 P.2d 591; Barber Asphalt Corp. v. Industrial Comm., 103 Utah 371, 135 P.2d 266.

188

ships upon workers and their dependents due to industrial injuries, and it has been wisely observed that the Act should be liberally construed to accomplish its purposes.[2] While an injured employee may in many instances receive much less compensation for his injury than if he were permitted to sue in a tort action, both the basis of his right to recover compensation and the rules of procedure are greatly liberalized for him— which affects the problem here confronting us.

It is apparent from the act that its framers realized that industrial injuries are such that their full extent cannot always be diagnosed with accuracy, nor their consequences predicted with complete certainty. In view thereof, section 35-1-78, U.C.A.1953, provides:

"The powers and jurisdiction of the commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings, or orders with respect thereto, as in its opinion may be justified."

Consistent with the thought that this represents a divergence from the rule which usually obtains, that a cause once determined by a tribunal having jurisdiction concludes the matter, is the statement of Justice Frick in the case of Aetna Life Ins. Co. v. Industrial Comm.:[3]

"While the writer is firmly of the opinion that the rule laid down in Salt Lake City v. Industrial Comm. [61 Utah 514, 215 P. 1047], should be adhered to, yet he is also convinced that section 3144, supra, should receive a liberal construction and application where, as in this case, the jurisdictional facts are all established * * * it is clear that the manifest intention of the Legislature was to abrogate, or, at least, to curtail or modify, the rigorous rule of res adjudicata."

This court has indeed uttered some very liberal expressions with respect to the continuing jurisdiction of the Industrial Commission which seem to go somewhat beyond the fact situation we are called upon to decide.[4] We are not here concerned with the merits of the decisions just referred to, but this much is unquestionably true: the doctrine of res judicata as applicable to court procedure is not in the strict sense applicable to proceedings before the Industrial Commission.

It is not to be assumed from the above that an applicant can re-apply to the Commission for a new determination upon the same facts merely because he may be dissatisfied with its former order, any more

2. M & K Corp. v. Industrial Comm., 112 Utah 488, 189 P.2d 132; see also Jones v. Calif. Packing Corp., Utah, 244 P.2d 640.
3. 69 Utah 102, 252 P. 567, 569.
4. Aetna Life Ins. Co. v. Industrial Comm., 73 Utah 366, 274 P. 139; Carter v. Industrial Comm., 76 Utah 520, 290 P. 776; for discussion of subject see 122 A.L.R. 554; see also Continental Casualty Co. v. Industrial Comm., 70 Utah 354, 260 P. 279.

than it means that a defendant in such a proceeding could do so. The act provides that a party aggrieved by the action of the Commission may apply for a rehearing or seek a review in this court within times prescribed by law.[5] This is the exclusive means of securing a review of a determination made on any given state of facts. If this is not done, it is inconceivable that the legislature intended, or that the law should be, that a party could file a new application and have the Commission redetermine his cause on identical facts. If such were the case, the proceedings themselves would be but a sham, because the Commission and other responding parties could be subjected to intolerable harassment by persistent refilings on the same claim. With respect thereto, this court has said: "It certainly was not intended by that section that the Commission might resume jurisdiction of a case that had once been regularly determined without some change or new development in the injury complained of not known to the parties when the former award was made."[6]

In view of the express terms of the statute hereinabove referred to, and the adjudicated cases supporting the idea of continuing jurisdiction of the Industrial Commission, there can be no doubt that once the application has been filed and the Commission's jurisdiction invoked, it has authority to entertain further proceedings to deal with any substantial changes or un-expected developments that may arise as a result of the injury. In the instant case, Mr. Spencer alleged that there was a change in his condition which he claims is traceable directly to the 1941 accident. It thus appearing that if the facts stated in his application be assumed to be true, the Commission could properly have granted relief. There was no error committed, in fact the commission was obliged to take jurisdiction and consider the new application. That being so, we next confront the question posed as to the merits of the case: whether the commission must be found in error in refusing to grant Mr. Spencer a further award.

At the hearing, held on November 18, 1954, plaintiff in addition to his own testimony relating to further disability of his shoulder, presented as witnesses his wife and two of his employees, whose testimony was to the effect that his shoulder would "swell up" and that he would often complain of pain in that area which substantially prevented him from doing his work; that there had been a marked change in the appearance of his shoulder during the last "couple of years" and that, as stated by his wife, "his shoulder has not been normal since the accident." Dr. Robert H. Lamb, an orthopedic surgeon, testified for plaintiff that he had examined him on about six occasions from March, 1953, until the hearing. In response to questions concerning disability of his shoulder, he said: "Due

5. Section 35-1-83, U.C.A.1953.

6. Salt Lake City v. Industrial Comm., 61 Utah 514, 215 P. 1047.

to the restriction of motion in the shoulder and the pain caused by this motion, I would estimate his permanent disability of that shoulder at between 15 and 20%." This estimate as to disability was corroborated by Drs. N. Frederick Hicken and L. N. Ossman who examined plaintiff on behalf of the Commission. They agreed that there appeared to be weakness of the arm and a decrease in function. Dr. Ossman said, "I know of no treatment that will benefit Mr. Spencer and I would recommend approximately 20 per cent permanent partial disability of the left upper extremity at the shoulder."

Based upon the proposition that the medical experts all agree that plaintiff now has a substantial disability of the left shoulder and arm, his counsel argues that since at the prior hearings the commission found that there was no permanent disability at the time of those hearings, it is now bound by its former finding, and that it is, therefore, incontestable that there has been a substantial change for the worse in the condition of plaintiff's shoulder since the prior hearings.

Conceding the correctness of the contention of plaintiff's counsel that the evidence is such that the commission must find the existence of a present disability, that does not conclusively settle the matter in favor of a further award, but brings us to confront the important question: Is the evidence such as to compel a finding by the Commission that such disability proximately resulted .from the 1941 injury? Or to state the converse: Does it appear that the refusal of the Commission to so find is so unreasonable as to be capricious and arbitrary?

■■ In making its determination herein, the commission properly considered the evidence and the proceedings of the previous hearings held in Mr. Spencer's case. However, it should be noted that when such evidence is considered, it should not be done in any manner which will result in any procedural disadvantage to the party affected. He must have had, or must be given, the opportunity to examine or cross-examine any witness who may have testified, and to offer evidence supporting his views, and this must be so with respect to the particular issues in question. There was no error committed prejudicial to the plaintiff in that regard.[7]

In the case at hand, plaintiff's doctor, Dr. Lamb, testified in part as follows: (emphasis ours)

"Q. * * * do you have an opinion as to whether or not the accident in 1941 could have caused this condition today? A. With * * * the patient's history of no disability in the shoulder until that time, it is *entirely possible* that the onset of his trouble was at the time of his injury.

7. See Klumpp v. Industrial Acc. Comm., of Utah, 74 Utah 316, 279 P. 612, 613, 107 Cal.App. 733, 291 P. 456; Denver & R. G. W. R. Co. v. Industrial Comm. and 71 C.J., Workmen's Compensation Acts, p. 1204.

191

"Q. What explanation, if any, do you have of the pain that he claims to have suffered in the shoulder generally? A. I think that it is on the basis of a peri-arthritis. *"There are many causes of peri-arthritis.* Some we don't know. For some reason the shoulder may just become stiff. Injury is a well known cause of peri-arthritis to the shoulder, *and there again it is difficult to determine the cause.*

"Q. Does age play a factor in it? A. It is much more common in individuals past middle life. We rarely see this in individuals in the first half of life, under thirty-five or forty."
and further,

" * * * we get traumatic arthritis many years following an injury to a joint, due to some malfunction about this joint causing excess wear and tear."

The most that can be claimed for Dr. Lamb's testimony is that the plaintiff, now 63 years of age, is suffering from peri-arthritis in his left shoulder, and that it is *possible* that this condition resulted from the 1941 injury. When considered in the light of other evidence in the record, including that of Dr. Reed Harrow and Dr. N. Frederick Hicken, who were both of the opinion that Mr. Spencer's "complaints and symptoms are entirely of a volitional character," it is not sufficient to *compel* a find-

ing that the 1941 injury was the cause of the disability he now suffers. Applying the rule set forth by Justice Moffat in the case of Kent v. Industrial Comm.[8] we cannot say that the commission has acted unreasonably, capriciously or arbitrarily in refusing to find for the plaintiff.

Affirmed.

McDONOUGH, C. J., and HENRIOD, WADE and WORTHEN, JJ., concur.

---

8. Kent v. Industrial Comm., 89 Utah 381, 57 P.2d 724; see also opinion of Mr.

Justice Wolfe in Norris v. Industrial Comm., 90 Utah 256, 61 P.2d 413.