**Robert N. BENNETT, Plaintiff,**

**v.**

**INDUSTRIAL COMMISSION OF UTAH, Johnson Brothers Construction and C.L. Matthews Construction, Defendants.**

**No. 20705.**

Supreme Court of Utah.

Sept. 30, 1986.

George K. Fadel, Bountiful, for plaintiff.

Carvel R. Shaffer, Bountiful, Erik M. Ward, Ogden, for defendants.

STEWART, Justice:

Plaintiff Robert N. Bennett seeks reversal of an Industrial Commission order which denied him workers' compensation benefits. At issue is whether Bennett was an employee of Johnson Brothers Construction and a "statutory employee" of C.L. Matthews Construction Co. We reverse the Commission's order.

The facts are as follows: Bennett, a trained cement finisher, was regularly employed by Johnson Brothers Construction from May, 1983, until November, 1983, when he was terminated due to a reduction in work force. After termination, Bennett collected unemployment benefits. During his unemployment, he established a checking account in the name of Bob Bennett Construction and informed Johnson Brothers that he intended to obtain a contractor's license, although he never did. During December, 1983, Bennett performed several small jobs for Johnson Brothers. On each job, he was paid cash in a lump sum without any deductions from the payments.

In February, 1984, C.L. Matthews Construction contracted to do remodeling work, including replacing the concrete driveway, at the Kimball Condominium in Salt Lake City. Matthews let a subcontract to Johnson Brothers to remove and replace the driveway. Johnson Brothers and Matthews agreed that payment for the job would be approximately $400 and that Matthews would furnish the concrete and rental equipment, including a jackhammer and a compressor, for the project. Matthews testified that he "went through all the details with Chris [Johnson], and then left the job for him to complete." Johnson Brothers then contacted Bennett and another former employee, Don Russell,[1] and, as the Commission stated, "asked them if they would like to do the job for a set sum." The job would take about two days. Bennett and Russell agreed.

On the first day, they removed all the concrete and completed the subgrading. On the second day, according to the Commission, "Johnson Brothers appeared at the site twice to see how the work was coming

---

1. The former employee is referred to in the transcript as "Don Crummit." His affidavit, however, is signed "Don Russell." We refer to him as Don Russell.

along and to check the specifications." During that day, Russell struck a nail which flipped into Bennett's eye. The injury resulted in surgery and the possibility that Bennett may need a lens transplant to fully regain his vision.

After Bennett was injured, one of the Johnsons stepped in to help Russell complete the job. Johnson Brothers tendered Bennett a check for $150 made payable to "Bob Bennett Construction" for his work on the job. Bennett refused to cash the check and returned it to Johnson Brothers with a note stating that he did not have a contractor's license. He requested that Johnson Brothers reissue the check payable to him personally.

The Commission held that Bennett was not entitled to workers' compensation benefits because he was an independent contractor. Its ruling was based on the findings that Bennett had intended to become an independent contractor, had established a bank account for a contracting business, and had been paid in a lump sum with no deductions. The Commission also found that Johnson Brothers "did not exercise a demonstrable amount of control over the work project. They only made two inspection visits to the site to determine if the specifications were being met." Because the Commission ruled that Bennett was not an employee of Johnson Brothers, it did not address the nature of the legal relationship between Matthews and Johnson Brothers.

### I.

■ In reviewing Industrial Commission orders, we defer to the Commission's findings of fact unless it makes findings not supported by substantial evidence. *Pinter Construction Co. v. Frisby,* 678 P.2d 305, 307 (Utah 1984). We do not defer to the Commission when construing statutory terms or when applying statutory terms to the facts unless the construction of the statutory language or the application of the law to the facts should be subject to the Commission's expertise gleaned from its accumulated practical, first-hand experience with the subject matter. *See general-*

*ly, Utah Department of Administrative Services v. Public Service Commission,* 658 P.2d 601, 611 (Utah 1983).

■ Whether a worker is an employee within the meaning of the workmen's compensation laws requires the application of a statutory standard to the facts. Since resolution of the issue is not benefitted by Commission expertise or experience, we do not defer to the Commission's ruling. *Board of Education v. Olsen,* 684 P.2d 49, 51 (Utah 1984). *See also Christean v. Industrial Commission,* 113 Utah 451, 455, 196 P.2d 502, 504 (1948); *Stover Bedding Co. v. Industrial Commission,* 99 Utah 423, 424–25, 107 P.2d 1027, 1027 (1940). Since the evidence is essentially uncontradicted, we need to determine only whether, as a matter of law, the Commission erred in ruling that Bennett was not an employee. *See Rustler Lodge v. Industrial Commission,* 562 P.2d 227, 228 (Utah 1977); *Sommerville v. Industrial Commission,* 113 Utah 504, 506, 196 P.2d 718, 719 (1948); *Intermountain Speedways, Inc., v. Industrial Commission,* 101 Utah 573, 577–78, 126 P.2d 22, 24 (1942); *Stover Bedding Co. v. Industrial Commission,* 99 Utah at 425, 107 P.2d at 1028; *Stricker v. Industrial Commission,* 55 Utah 603, 607–08, 188 P. 849, 851 (1920).

### II.

■ On the merits, we first address the issue of whether the Commission erred in ruling that Bennett was not an employee of Johnson Brothers. Section 35–1–43(1)(b) defines "employee" as every person "in the service of" an employer as defined in § 35–1–42(2). What constitutes being "in the service of" has often been determined by reference to common law master-servant principles, although in *Rustler Lodge,* we indicated a broadening of the term pursuant to Restatement (Second) of Agency § 220. *Rustler Lodge,* 562 P.2d at 228. However, it will almost always follow that if the evidence shows that an "employer" retains the right to control the work of the claimant, the claimant is the employer's employee for workmen's compensation pur-

poses. *E.g., Bambrough v. Bethers,* 552 P.2d 1286, 1291 (Utah 1976); *Auerbach Co. v. Industrial Commission,* 113 Utah 347, 195 P.2d 245 (1948). Certainly, the concept of right to control is not to be rigidly and narrowly defined.[2] Rather, it should be defined to give full effect to the remedial purposes of the Workmen's Compensation Act. See *Hinds Co. v. Industrial Commission,* 20 Utah 2d 322, 437 P.2d 451 (1968), which held that it was proper to resolve doubt as to whether a worker was an employee in favor of the employee.

■ Many factors have been applied in determining the right to control. Among those factors are actual supervision of the worker, the extent of the supervision, the method of payment, the furnishing of equipment for the worker, and the right to terminate the worker. *Harry L. Young & Sons, Inc. v. Ashton,* 538 P.2d 316, 318 (Utah 1975). Although these factors are not inclusive, they are relevant in many cases, including this case.

■ The uncontested evidence indicates that Johnson Brothers retained and exercised the right to control Bennett's job conduct. Johnson Brothers dealt with Bennett as an employee. Bennett was simply told how much he would be paid. During the two days Bennett was on the job, someone from Johnson Brothers appeared twice to oversee Bennett's performance. When Bennett was injured, Johnson Brothers provided the labor to fill in for Bennett. They hired both Bennett and Don Russell to do the job. It was not Bennett who hired Russell, as would have been the case if Bennett were an independent contractor. Bennett was hired to do a short, one-time project. Thus, although Bennett was paid in a lump sum, rather than by the hour, the pay tendered was reduced, apparently because of his time off the job due to the accident. Even though he had no deductions withheld from his pay, that is of no significance since the amount paid was so small and the job of such short duration.

Although Bennett had been an employee of Johnson Brothers and although he had been terminated because of a reduction in work force, his recall for a short time was consistent with the manner in which he had performed during his previous tenure with Johnson Brothers. He performed exactly the same type of work he had performed while officially on Johnson Brothers' payroll. Finally, it was Matthews who furnished both the concrete and the heavy equipment that Bennett and Russell used on the job.[3] Nothing in Bennett's relationship to Johnson changed, except for Johnson Brothers' not withholding payroll deductions from the amounts paid Bennett.

On somewhat similar facts, a claimant in *Maryland Casualty Co. v. Industrial Commission,* 12 Utah 2d 223, 364 P.2d 1020 (1961), was held to be an employee.

---

**2.** Professor Larson strongly suggests that right of control is an inappropriate test for determining employee status for workers' compensation purposes. 1C A. Larson, *Workmen's Compensation Law,* § 43.42 (1986). The control test was borrowed from agency law. The purpose of agency law, to define the limits of a master's vicarious liability for a servant's misdeeds, is entirely different from the remedial purpose of the workmen's compensation acts, which is to spread the burden of industrial accidents across the population. *Id; see Pinter Construction Co. v. Frisby,* 678 P.2d 305, 308 (Utah 1985); *Stover Bedding Co. v. Industrial Commission,* 99 Utah 423, 429–31, 107 P.2d 1027, 1029–30 (1940) (Wolfe, J., dissenting). Therefore, Larson suggests, more emphasis should be placed on the nature of the work performed. Larson, *supra,* § 43.50. If a worker is integrally or continuously involved in an employer's business, and the worker's own operations are not such that they could readily channel the costs of an industrial accident to the general population, the worker should be considered an employee for workmen's compensation purposes. *Id.*

**3.** Professor Larson states that the furnishing of valuable equipment to a worker indicates an employer-employee relationship. The furnishing-of-valuable-equipment rule should only apply to valuable equipment. An employer would have a much greater interest in controlling the actions of a worker using the employer's $10,000 truck than in controlling a worker using the employer's $5 hammer. Larson, *supra,* § 44.34.

There, the worker was hired to furnish and operate a drilling rig for one specific drilling project. He was not listed as an employee on the employer's books, nor were deductions withheld from his pay. However, he was paid by the shift and a supervisor was present most of the time he worked.

Bennett's intention to become an independent contractor at some indefinite time in the future was irrelevant. Although he had opened a bank account in the name of "Bob Bennett Construction," and had apparently obtained the papers to apply for a contractor's license, he never actually filed them. What Bennett might have intended to do later was not indicative of his status at the time of the accident.

In sum, we hold that the Commission erred, as a matter of law, in holding that Bennett was not an employee of Johnson Brothers.

### III.

Bennett also alleged that Matthews was liable for his workers' compensation coverage pursuant to the "statutory employer" portion of § 35-1-42(2), which states:

> Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and this work is a part or process in the trade or business of the employer, such contractor, all persons employed by him, all subcontractors under him, and all persons employed by any of these subcontractors, are considered employees of the original employer.

According to Professor Larson, statutes of this kind were passed "to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their work-

ers." Larson, *supra*, § 49.14. A secondary purpose of these statutes was "to forestall evasion of [workmen's compensation acts] by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers ..." *Id.* § 49.15.

■ Under § 35-1-42(2), a *subcontractor's employee* is deemed an employee of the *general contractor* if (1) the general contractor retains some supervision or control over the subcontractor's work, and (2) the work done by the subcontractor is a "part or process in the trade or business of the employer." *E.g., Pinter Construction Co. v. Frisby*, 678 P.2d at 307 (Utah 1984); *Rustler Lodge v. Industrial Commission*, 562 P.2d at 228-29; *Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d at 318 (1975).

A subcontractor's work is "part or process in the trade or business of the employer," if it is part of the operations which directly relate to the successful performance of the general contractor's commercial enterprise. *Pinter Construction Co. v. Frisby*, 678 P.2d at 309; *Lee v. Chevron Oil Co.*, 565 P.2d 1128, 1131 (Utah 1977); *King v. Palmer*, 129 Conn. 636, 640-41, 30 A.2d 549, 552 (1943). The trade or business of a general contractor in the construction business is construction, *Smith v. Alfred Brown Co.*, 27 Utah 2d 155, 158, 493 P.2d 994, 996 (1972); *Adamson v. Okland Construction Co.*, 29 Utah 2d 286, 289, 508 P.2d 805, 807 (1973); Annot., 150 A.L.R. 1214, 1223 (1944), and any portion of the general contractor's construction project which is subcontracted out will ordinarily be considered "part or process in the trade or business of" the general contractor.

■ The requirement in § 35-1-42(2) that the general contractor, as a "statutory employer," retain "supervision or control" over the work of the subcontractor who hired the "statutory employee" cannot, by

definition, be equated with the common law standard for determining whether a person is an employee or an independent contractor. In dealing with "statutory" employees, the statute begins with the proposition that the claimant qualifies as an employee of the subcontractor. But the statutory requirement that the general contractor have "supervision or control" over the work of the subcontractor cannot mean that the subcontractor must also qualify as an employee of the general contractor. That would be at least highly improbable and perhaps impossible by definition. Rather, the term "supervision or control" requires only that the general contractor retain ultimate control over the project. *Pinter Construction Co. v. Frisby*, 678 P.2d at 309. As stated in *Nochta v. Industrial Commission*, 7 Ariz.App. 166, 436 P.2d 944 (1968),

> The evidence is clear in the instant case that the respondent construction company exercised that degree of control over the job to be performed by the petitioner sufficient to bring petitioner within the meaning of § 23–902, subsec. B. They provided the material that he was to use; the job superintendent together with the architect made inspections of the job and there were consultations; but the final and exclusive control of the job was vested in the job superintendent. The fact that petitioner was knowledgeable and trusted in his field does not lessen the ultimate control over the job by the job superintendent.

*Id.* at 169–70, 436 P.2d at 947–48. In *Smith v. Alfred Brown Co.*, 27 Utah 2d 155, 493 P.2d 994, this Court found that the general contractor held on a major construction project at Brigham Young University, by virtue of its ultimate supervisory control over the entire project, had sufficient control over the masonry subcontractor on the project to warrant holding the general contractor to be the statutory employer of one of the masonry subcontractor's employees. *Id.* at 158–59, 493 P.2d at 996.

■ Although the construction process requires the general contractor to delegate to a greater or lesser degree to subcontractors, the general contractor remains responsible for successful completion of the entire project and of necessity retains the right to require that subcontractors perform according to specifications. The power to supervise or control the ultimate performance of subcontractors satisfies the requirement that the general contractor retain supervision or control over the subcontractor. *See Pinter Construction Co. v. Frisby, supra*, 678 P.2d at 309. *See generally Tanner Companies v. Superior Court*, 144 Ariz. 141, 146, 696 P.2d 693, 698 (1985) (Feldman, J., dissenting). Therefore, as long as a subcontractor's work is a part or process of the general contractor's business, an inference arises that the general contractor has retained supervision or control over the subcontractor sufficient to meet the requirement of § 35–1–42(2). *See Parkinson v. Industrial Commission*, 110 Utah 309, 316, 172 P.2d 136, 140 (1946).

Finally, we note that the remedial purpose of the Workmen's Compensation Act supports the conclusion that § 35–1–42(2) should be construed in favor of protecting the employee. *E.g., Pinter Construction*, 678 P.2d at 307; *Maryland Casualty Co. v. Industrial Commission*, 12 Utah 2d at 225, 364 P.2d at 1022 (1961); *Spencer v. Industrial Commission*, 4 Utah 2d 185, 187–88, 290 P.2d 692, 693–94 (1955). The Arizona Supreme Court, in construing an almost identical statutory provision, has stated that it "is a legislatively created scheme by which conceded nonemployees are deliberately brought within the coverage of the [Workmen's Compensation] Act." *Young v. Environmental Air Products, Inc.*, 136 Ariz. 158, 161, 665 P.2d 40, 43 (1983). *Accord* Larson, *supra*, § 49.00. Wisconsin has also recognized the broad scope of its similar statute:

> The entire statutory scheme indicates a desire on the part of the legislature to extend the protection of these laws to those who might not be deemed employ-

ees under the legal concepts governing the liability of a master for the tortious acts of his servant.

*Price County Telephone Co. v. Lord,* 47 Wis.2d 704, 715–16, 177 N.W.2d 904, 910 (1970) (footnote omitted).

The Industrial Commission did not address whether Bennett was a statutory employee of Matthews. We therefore remand this case to the Commission for appropriate findings on that issue in light of the principles discussed above.

Reversed as to Johnson Brothers and remanded for further proceedings as to Matthews.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

HOWE, J., concurs in the result.