Dennis JACOBSEN and/or State Insurance Fund, Plaintiffs,

v.

INDUSTRIAL COMMISSION OF UTAH, Defendant.

No. 860222–CA.

Court of Appeals of Utah.

June 15, 1987.

James R. Black, Black & Moore, Salt Lake City, for plaintiffs.

Ralph L. Finlayson, Asst. Atty. Gen., Building Mail.

Phillip B. Shell, Murray, for interested party Mark Pugh.

Robert J. Shaugnessy, Salt Lake City, for interested party Bruce Ring.

Susan Pixton, Administrator Default Indemnity Fund, Utah Indus. Com'n, interested party, Salt Lake City.

Before JACKSON, ORME and BENCH, JJ.

## OPINION

JACKSON, Judge:

Plaintiff Dennis Jacobsen seeks reversal of an Industrial Commission order that requires him to pay workers' compensation benefits due Mark Pugh. At issue is whether Pugh was a statutory employee of Jacobsen and, if so, whether Jacobsen or the Uninsured Employers' Fund is next in line to pay Pugh's benefits if Pugh's immediate employer cannot. We affirm the Commission's order.

Pugh was employed as a laborer-carpenter's helper by Bruce Ring, a subcontractor on a job for Jacobsen, a general contractor. Pugh's average weekly wage was $165.00 at the time of his injury in October, 1985. The job was an addition to a residence. Ring had previously worked as Jacobsen's employee performing carpentry work. But in mid–1985 Ring began working as a subcontractor on Jacobsen's jobs. Ring considered himself subject to the complete control of Jacobsen on this job.

Jacobsen was Ring's direct boss and had overall responsibility for the project. Jacobsen visited the job site two to five times weekly, and would stay all day at times. While there, he gave specific instructions and checked later to insure compliance. Jacobsen, almost every time he was on the job site, directed changes in the way Ring was doing the work. He asked Ring to hire more employees to speed up the work, and Ring complied. He instructed Ring which carpentry work to do next, and Ring felt obligated to comply. Ring would have fired Pugh if requested to do so by Jacobsen. Jacobsen even gave Pugh suggestions on how to do a portion of the work. Ring did not work for any other contractor during the time he was associated with Jacobsen. Ring and Jacobsen did not change the manner and method of Jacobsen's supervision from when Ring was his hourly employee. Ring considered Jacobsen in charge of the entire job and everyone who worked on it. Jacobsen requested Ring to put in a full day's work. If Jacobsen told Ring to make changes in the "specs" that required extra time, Jacobsen paid Ring by the hour for those changes or completed them himself.

Since the evidence is essentially uncontradicted, we need to determine only whether, as a matter of law, the Commission erred in ruling that Jacobsen was a statutory employer of Pugh, as set forth in Utah Code Ann. § 35–1–42 (1986). *Bennett v. Industrial Comm'n of Utah*, 726 P.2d 427, 429 (Utah 1986).[1] This requires

---

**1.** *Bennett* was decided after the 1986 stylistic amendments rearranging sections 35–1–42 and 43, but confusingly cites the statute in both its pre- and post-amendment forms. Although we recognize that the matter before us was decided by the Industrial Commission prior to the effective date of the 1986 rearrangement of these sections, all citations in this opinion are to the

the application of a statutory standard to the facts, and we need not defer to the Commission's ruling. *Board of Educ. v. Olsen,* 684 P.2d 49, 51 (Utah 1984); *see generally, Utah Dep't of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 611 (Utah 1983).

Utah Code Ann. § 35–1–42(3) (1986) provides:

(3) As used in this section:

(a) "Regularly" includes all employments in the usual course of the trade, business, profession, or occupation of the employer, whether continuous throughout the year or for only a portion of the year.

(b) Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and this work is a part or process in the trade or business of the employer, the contractor, all persons employed by him, all subcontractors under him, and all persons employed by any of these subcontractors, are considered employees of the original employer.

(c) Any person, firm, or corporation engaged in the performance of work as an independent contractor is considered an employer.

(d) "Independent contractor" means any person, association, or corporation engaged in the performance of any work for another who, while so engaged, is independent of the employer in all that pertains to the execution of the work, is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design.

Section 35–1–42(3)(b) (1986) is commonly referred to as the "statutory employer" portion of the statute. Section 35–1–43(1)(b) (1986) defines "employee" as every person in the service of any employer as defined in section 35–1–42. In *Bennett,* our Supreme Court explained the purpose of the "statutory employer" paragraph as follows:

According to Professor Larson, statutes of this kind were passed "to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." ... A secondary purpose of these statutes was "to forestall evasion of [workmen's compensation acts] by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers...."

*Bennett v. Indus. Comm'n of Utah,* 726 P.2d at 431, quoting 1C A. Larson, *Workmen's Compensation Law,* §§ 49.14, 49.15 (1986).

### I. *Supervision and Control*

Under Utah Code Ann. § 35–1–42(3)(b), a subcontractor's employee is considered an employee of the general contractor if (1) the general contractor retains supervision or control over the subcontractor's work; and (2) the work done by the subcontractor is a part or process in the trade or business of the general contractor.

The term "supervision or control" requires only that the general contractor retain ultimate control over the project. Actual exercise of control does not determine the relationship; the right to supervise or control the ultimate performance of subcontractors is determinative. *Pinter Constr. Co. v. Frisby,* 678 P.2d 305, 309 (Utah 1984). *See Smith v. Alfred Brown Co.,* 27 Utah 2d 155, 493 P.2d 994 (1972); *Nochta v. Indus. Comm'n,* 7 Ariz.App. 166, 436 P.2d 944 (1968). That right satisfies the statutory requirement that the general contractor retain supervision or control over the subcontractor. As long as a subcontractor's work is part or process of the general contractor's business, an inference arises that the general contractor has

statute in its post-amendment configuration, in

order to be most useful to practitioners.

retained supervision or control over the subcontractor sufficient to meet the requirement of the statute. *Bennett,* 726 P.2d at 432. The evidence recited above, however, demonstrates that Jacobsen actually retained and exercised final and exclusive control of the job, so the stated inference need not be relied on in this case.

## II. *Part or Process*

In *Bennett,* the Utah Supreme Court said:

A subcontractor's work is "part or process in the trade or business of the employer," if it is part of the operations which directly relate to the successful performance of the general contractor's commercial enterprise. *Pinter Construction Co. v. Frisby,* 678 P.2d at 309; *Lee v. Chevron Oil Co.,* 565 P.2d 1128, 1131 (Utah 1977); *King v. Palmer,* 129 Conn. 636, 640–41, 30 A.2d 549, 552 (1943). The trade or business of a general contractor in the construction business is construction, *Smith v. Alfred Brown Co.,* 27 Utah 2d 155, 158, 493 P.2d 994, 996 (1972); *Adamson v. Okland Construction Co.,* 29 Utah 2d 286, 289, 508 P.2d 805, 807 (1973); Annot., 150 A.L.R. 1214, 1223 (1944), and any portion of the general contractor's construction project which is subcontracted out will ordinarily be considered "part or process in the trade or business of" the general contractor.

*Bennett,* 726 P.2d at 431.

■ Jacobsen's trade or business was the total project—the construction of the residential addition. *Smith v. Alfred Brown Co.,* 27 Utah 2d 155, 158, 493 P.2d 994, 996 (1972). Carpentry work was integral to the building addition Jacobsen contracted to construct. The project could not be completed without carpenters like Pugh and Ring. Without them, Jacobsen would have had to hire other carpenters to perform this necessary part of the project. In that relationship, Pugh was one of those correctly considered an employee of Jacobsen, the general contractor, under Utah Code Ann. § 35-1-42(3)(b) (1986). The Commission did not err as a matter of law

in concluding that Jacobsen was Pugh's statutory employer.

## III. *Liability*

The 1986 Legislature created the Uninsured Employers' Fund as successor to the Default Indemnity Fund. The new Fund is for

the purpose of paying and assuring, to persons entitled to workers' compensation benefits when *every employer of the claimant* who is found to be individually, jointly, or severally liable ... does not have sufficient funds, insurance, sureties, or other security to cover workers' compensation liabilities under this chapter.

Utah Code Ann. § 35-1-107(1) (1986) (emphasis added).

■ Ring was Pugh's direct employer. Ring is primarily liable. Jacobsen was Pugh's statutory employer. Jacobsen is, therefore, also liable with Ring. "[I]n the increasingly common situation displaying a hierarchy of principal contractors upon subcontractors upon sub-subcontractors, if an employee of the lowest subcontractor on the totem pole is injured, there is no practical reason for reaching up the hierarchy any further than the first insured contractor." 1C A. Larson, *Workmen's Compensation Law,* § 49.14 (1986). Ring has no means to pay benefits to Pugh, but Jacobsen, the party secondarily liable, has insurance coverage. If Jacobsen did not have sufficient funds or coverage, then "every" employer of Pugh would be unable to cover the liabilities for Pugh's benefits, as contemplated in section 35-1-107(1) (1986). At that point, and not until that point, the Uninsured Employers' Fund would come into operation for the benefit of Pugh. In this case, it is not necessary for the Fund to pay benefits since Jacobsen and his insurer, the State Insurance Fund, are required to pay because Ring cannot.

The Commission's decision has ample support in the record, and it did not unreasonably conclude that Jacobsen is a statutory employer secondarily liable after Ring to pay Pugh's benefits. The order of the

Industrial Commission is therefore affirmed.

ORME and BENCH, JJ., concur.