## CHAMPLIN PETROLEUM COMPANY, Plaintiff,

v.

## DEPARTMENT OF EMPLOYMENT SECURITY and Michael D. Robinson, Defendants.

### No. 860266–CA.

Court of Appeals of Utah.

Oct. 16, 1987.

H. Michael Keller, Donald L. Dalton, VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for plaintiff.

K. Allan Zable, Atty., Dept. of Employment Sec., Salt Lake City, for defendants.

Before JACKSON, BENCH and GARFF, JJ.

### OPINION

JACKSON, Judge:

Champlin Petroleum Company has petitioned this Court for a writ of review challenging a decision of the Industrial Commission's Board of Review. The Board affirmed an administrative law judge's holding that Michael D. Robinson was entitled to unemployment benefits because he was not discharged from his employment for just cause under the Employment Security Act, Utah Code Ann. § 35–4–5(b)(1) (1987). Champlin was, accordingly, held liable for the benefit charges in connection with Robinson's claim. We affirm the Board of Review's decision.

The following basic facts are not disputed by the parties:

Champlin Petroleum Company ("Champlin") took over operation of the Pine View natural gas processing plant in Summit County, Utah, from American Quasar in April of 1985. Robinson, a gas plant operator for American Quasar, was retained in that position by Champlin. As such, he primarily worked alone in a job that had the potential for emergency, life-threatening situations requiring fast and efficient handling to avoid injury to persons or prop-

erty. Champlin's schedule required him to work erratic hours—seven evening shifts before two days off, then six daylight shifts and two days off, followed by seven morning shifts and four days off. Robinson's work performance was never criticized as inadequate or improper by either employer.

Robinson had a history of mental disturbances of varying degrees of severity dating back to 1975. In 1982, Robinson was diagnosed as suffering from paranoid schizophrenia, a condition for which he was treated with medication. Records of his treatment for these disturbances were in his file at Champlin. At the hearing before the administrative law judge, he described the 1982 episode as an emotional or nervous breakdown.

Robinson suffered a similar breakdown episode on April 30, 1986, which required immediate hospitalization that lasted until May 12. During this time, Champlin paid Robinson accumulated sick leave benefits. Dr. Davidson, Robinson's treating physician, wrote "Mike is able to return to work" on a prescription form dated May 19. On May 21, Robinson's supervisor received a copy of a May 19 hospital discharge report in which Davidson diagnosed symptoms of paranoia attributed to intermittent use of and withdrawal from marijuana about a month earlier, coupled with an underlying manic depressive disease. Davidson prescribed Lithium and Haldol as treatment for the mental illness and suggested that, before Robinson returned to his job, he should be "given an opportunity to work in an environment where his job performance [could] be evaluated by someone else."

Champlin, upon receipt of the discharge report, immediately notified Robinson that he might be suspended. On May 28, he received a termination letter that referred to Davidson's note and report and then stated, "Since you are unable to return to work, without limitation, we regretfully must terminate your employment as of the end of your paid sick leave, May 24, 1986."

Our review of the application of the law to the pertinent facts in this case falls under the "intermediate" standard of review, under which we must determine whether it is within the limits of reasonableness and rationality. *Young v. Board of Review,* 731 P.2d 480, 482 (Utah 1986); *Board of Educ. of Sevier County v. Board of Review,* 701 P.2d 1064, 1067 (Utah 1985); *Kehl v. Board of Review,* 700 P.2d 1129, 1133 (Utah 1985); *City of Orem v. Christensen,* 682 P.2d 292, 293 (Utah 1984). *See Utah Dept. of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 610 (Utah 1983). We must affirm the Board's determination unless, as a matter of law, it was wrong because only the opposite conclusion could be drawn from the facts. *City of Orem v. Christensen,* 682 P.2d at 293; *Continental Oil Co. v. Board of Review,* 568 P.2d 727, 729–30 (Utah 1977).

■ Section 35-4-5(b)(1) states:

An individual is ineligible for benefits or for purposes of establishing a waiting period:

. . . . .

(b)(1) For the week in which the claimant was discharged for just cause or for an act or omission in connection with employment, not constituting a crime, which is deliberate, willful, or wanton and adverse to the employer's interest, if so found by the commission, and thereafter until the claimant has earned an amount equal to at least six times the claimant's weekly benefit amount in bona fide covered employment.

A claimant is terminated for just cause, and is thereby precluded from receiving unemployment benefits, when his or her culpability, control over the conduct, and knowledge that the conduct will likely result in termination is shown. *Grinnell v. Board of Review,* 732 P.2d 113 (Utah 1987); *Green v. Board of Review,* 728 P.2d 996 (Utah 1986); *Lane v. Board of Review,* 727 P.2d 206 (Utah 1986).

In findings and conclusions adopted in full by the Board, the administrative law judge ruled that the evidence did not sufficiently establish either the control factor or the culpability factor prerequisite to a find-

ing of just cause for Robinson's dismissal.[1] Plaintiff Champlin assails this result as arbitrary and unreasonable, asserting that only the opposite conclusion can be reached on the facts as found. We disagree.

■ Because the critical question here is whether Robinson was fired for "just cause," we must focus on what that "cause" was. There is no evidence that Robinson's work performance up to his April 30, 1986 hospitalization was anything but acceptable to Champlin, even though Robinson admitted at the hearing that he smoked marijuana twice a week until March, 1986, after finishing his work shift, in order to help him sleep. Indeed, Champlin's District Manager, Robinson's boss, testified unequivocally that Robinson was a satisfactory employee who had no difficulty in maintaining and performing his job. There is also no evidence in the record that Robinson violated company policy by reporting to work under the influence of marijuana or by using it while on the job.

It is clear from the record, especially Champlin's termination letter, that Robinson's discharge was prompted by his mental illness and breakdown, coupled with Dr. Davidson's intimation that Robinson would be unable to perform his job without temporary supervision. But, as the administrative law judge specifically found, Champlin knew in 1985 of Robinson's diagnosed mental illness and allowed him to continue in his position anyway. It was not until Robinson's April, 1986 breakdown that his mental illness progressed to the point that he was temporarily unable to report to work.

Although not framed in these terms, the heart of Champlin's argument is that *all* of Robinson's mental problems were *completely* caused by his own volitional and controllable acts in using marijuana. The evidence in the record and the basic facts found by the judge do not, however, compel that conclusion. In his factual findings, the administrative law judge recognized Robinson's history of mental problems; he found that Robinson was diagnosed in April, 1986 as having a manic depressive disease and that he suffered symptoms of paranoia attributed by Davidson to cannabis use coupled with the manic depressive disorder. That Robinson's voluntary marijuana use had *some* effect on his mental condition, i.e., by giving rise to paranoid symptoms, was recognized by the administrative law judge in his finding that Robinson's April, 1986 breakdown and hospitalization were "related at least in part to marijuana use as it exacerbated a probable manic depressive disease." Contrary to Champlin's contentions, there is no evidence in the record that Robinson's serious underlying mental disorders, diagnosed as schizophrenia in 1982 and as manic depressive illness in 1986, were caused by his intermittent marijuana use.

These basic facts are reasonably grounded in competent and substantial evidence in the record. They are, therefore, unassailable by Champlin. *Northwest Foods Ltd. v. Board of Review*, 731 P.2d 470, 471 (Utah 1986); *Young v. Board of Review*, 731 P.2d 480, 482 (Utah 1986); *Logan Regional Hosp. v. Board of Review*, 723 P.2d 427, 428–29 (Utah 1986). *See* Utah Code Ann. § 35–4–10(i) (1987). Based on them, it was well within the bounds of reason and ra-

---

1. The Department of Employment Security's administrative rule interpreting "just cause" as it is used in section 35–4–5(b)(1) gives the following guidance as to what these two factors mean:

   a. Culpability

   This is the seriousness of the conduct or the severity of the offense as it affects continuance of the employment relationship. The discharge must have been necessary to avoid actual or potential harm to the employer's rightful interests. A discharge would not be considered "necessary" if it is not consistent with reasonable employment practices. The wrongness of the conduct must be considered

   in the context of the particular employment and how it affects the employer's rights. If the conduct was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated, potential harm may not be shown and therefore it is not necessary to discharge the employee.

   . . . .

   c. Control

   The conduct must have been within the power and the capacity of the claimant to control or prevent.

   Unemployment Insurance Rule 35–4–5(b)(1) para. B1 (1986).

tionality for the Board to conclude: (1) that Robinson's mental illness was not sufficiently within his control; and (2) that any exacerbation of his mental problems from his use of marijuana did not rise to the level of fault essential to establish just cause and deny him unemployment benefits.

We affirm the decision of the Board of Review. In doing so, we reiterate that, although Champlin may have had reason to remove Robinson from his unsupervised operator position because of his mental problems, "not every cause for discharge provides a basis to deny eligibility for unemployment compensation." *Clearfield City v. Department of Employment Sec.*, 663 P.2d 440, 441 (Utah 1983). *Accord Board of Educ. of Sevier County v. Board of Review*, 701 P.2d at 1068.

BENCH and GARFF, JJ., concur.