**ADELE'S HOUSEKEEPING, INC., Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

No. 870445-CA.

Court of Appeals of Utah.

June 28, 1988.

William J. Critchlow, III (argued), Parker, Thornley & Critchlow, Ogden, for plaintiff.

K. Allan Zabel, Winston M. Faux (argued), Salt Lake City, for defendant Department of Employment Sec.

Before BENCH, BILLINGS and JACKSON, JJ.

## OPINION

BENCH, Judge:

Plaintiff Adele's Housekeeping, Inc. (Adele's) petitions this Court for review of a decision of the Board of Review of the Industrial Commission (Board) finding Adele's liable for employer contributions. We reverse.

Adele's provides a housekeeping service wherein, through various advertising methods, Adele's solicits homeowners desiring housekeeping services and housekeepers willing to offer their services. Typically, a homeowner contacts Adele's, requesting weekly, monthly, or even one-time housekeeping services. Adele's then contacts various housekeepers inquiring whether they would be interested in working for the homeowner. Once a housekeeper accepts a particular cleaning assignment, the housekeeper contacts the homeowner directly. The homeowner instructs the housekeeper as to when, where, and how the job should be done. Adele's does not normally inspect any work, but relies on homeowner feedback, if any. Upon completion of the job, most homeowners pay the housekeeper by a check made payable to Adele's. Upon delivery of the check, Adele's then pays the housekeeper on a biweekly basis after first deducting a commission of twenty-five to fifty percent, depending on the duration of the homeowner-housekeeper relationship. Occasionally, homeowners pay the housekeeper directly in cash or by check made payable to the housekeeper. In that event, the housekeeper is free to keep the payment but must remit to Adele's the required commission.

Adele's executes a written agreement with each housekeeper. Under the agreement, Adele's agrees to prepare a weekly work schedule convenient to the housekeeper, provide check cashing and collection services, provide liability insurance upon request, provide business cards, 1099 tax forms, and other printed materials, and secure replacement housekeepers with 48 hours notice. Adele's provides no equipment, supplies, or training. The housekeeper agrees not to contact independently any homeowner referred by Adele's during the term of the agreement, but may terminate the agreement by paying Adele's a $200 finder's fee per homeowner. The housekeeper also agrees to fulfill the specified schedule or provide a replacement, or to notify Adele's at least 48 hours in advance. The housekeeper is required to obtain a city license. The agreement specifically states, "Adele's provides no licensing, control or direction to Housekeeper."

An auditor for defendant Department of Employment Security (Department) conducted a field audit of Adele's for the years 1983 through 1985. The auditor sent questionnaires to approximately sixty present and former housekeepers; seventeen housekeepers responded. Based on their responses and his own investigation, the auditor determined the services provided by the housekeepers are employment, thereby subjecting Adele's to employer contributions. Adele's appealed the field auditor's determination. After a hearing on January 20, 1987, an appeal referee reversed the auditor's determination. The appeal referee concluded Adele's functions as a broker, not an employer, and that the

housekeepers perform their services for the homeowners directly. In response to the Department's request for reconsideration, the appeal referee affirmed his decision.

The Department appealed the appeal referee's decision. The Board reversed, finding the housekeepers' services to be employment under Utah Code Ann. § 35–4–22(j)(5) (1988), and remuneration for their services to constitute wages subject to employer contributions. On petition for writ of review, Adele's claims the Board erred in its interpretation of section 35–4–22(j)(5). Adele's argues no employment relationship exists between it and the housekeepers since it does not request the housekeepers' services nor pay for their services.

■ The facts in the instant case are essentially undisputed. Rather, Adele's challenges the Board's application of the law to the facts. We defer to the Board's interpretation and application of the operative provisions of the Employment Security Act so long as the Board's decision is reasonable and rational, i.e., the findings of fact support the Board's conclusion. *Buick v. Department of Employment Sec.*, 752 P.2d 358 (Utah App.1988); *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601 (Utah 1983).[1]

Section 35–4–22(j)(5) states:

Services performed by an individual for wages or under any contract for hire, written or oral, express or implied, are considered to be employment subject to this chapter, unless it is shown to the satisfaction of the commission that:

(A) the individual has been and will continue to be free from control or direction over the performance of those services, both under his contract of hire and in fact; and

(B) the individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service.

The Board concluded "Adele's has the legal right to direct and control" the housekeepers' work. The Board also concluded the housekeepers were not customarily engaged in a similar independently established business. Therefore, the Board held the housekeepers' services failed to meet the so called "AB exclusionary test" of section 35–4–22(j)(5).

■ However, as Adele's correctly points out, the AB test applies only where it has been previously determined the services constituted employment, i.e., performed "for wages or under any contract for hire." *Fuller Brush Co. v. Industrial Comm'n*, 99 Utah 97, 104 P.2d 201 (1940). "Wages" is defined as "all remuneration

---

1. We recognize that the Utah Supreme Court enunciated a less deferential standard of review in *Bennett v. Industrial Commission*, 726 P.2d 427, 429 (Utah 1986):

Whether a worker is an employee within the meaning of the workmen's compensation laws requires the application of a statutory standard to the facts. Since resolution of the issue is not benefitted by Commission expertise or experience, we do not defer to the Commission's ruling.

In *Jacobsen v. Industrial Commission*, 738 P.2d 658, 659–60 (Utah App.1987), this Court followed the *Bennett* standard in reviewing the Commission's determination that a contractor was the statutory employer of a subcontractor for purposes of the workers' compensation statutes. It is apparent, however, that *Bennett* is an aberration in which the applicable standard of review is misstated. The case cited as authority for it, *Board of Education of Alpine School District v. Olsen*, 684 P.2d 49 (Utah 1984), is somewhat misleading on this point. Nonetheless, even the *Olsen* Court accurately stated the stan-

dard of review applicable to the issue before us: "The decision below, that Olsen was an employee for purposes of workers' compensation, is entitled to some deference, but is subject to judicial review to assure that it falls within the limits of reasonableness or rationality." *Id.* at 51 (citing *Utah Dep't of Admin. Servs.*, 658 P.2d at 610). Virtually all cases, both prior to and since *Bennett*, apply the intermediate "reasonable and rational" standard established in *Utah Department of Administrative Services* to the Industrial Commission's interpretation and application of operative provisions of the Employment Security Act and workers' compensation statutes. *See, e.g., Taylor v. Industrial Comm'n*, 743 P.2d 1183 (Utah 1987); *Grinnell v. Board of Review*, 732 P.2d 113 (Utah 1987); *State Tax Comm'n v. Industrial Comm'n*, 685 P.2d 1051 (Utah 1984); *Clearfield City v. Department of Employment Sec.*, 663 P.2d 440 (Utah 1983); *Wilburn v. Interstate Electric*, 748 P.2d 582 (Utah App.1988); *Champlin Petroleum Co. v. Department of Employment Sec.*, 744 P.2d 330 (Utah App.1987).

for personal services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash." Utah Code Ann. § 35–4–22(p) (1988). A "contract for hire" is defined as "any agreement under which one person performs personal services at the request of another who pays for the services." *Blamires v. Board of Review*, 584 P.2d 889, 891 (Utah 1978). In determining whether an employment relationship exists, we look behind the agreement to the actual status between the parties. *Singer Sewing Mach. Co. v. Industrial Comm'n*, 104 Utah 175, 134 P.2d 479 (1943).

Adele's advertises for both housekeepers and homeowners. When a homeowner requests housekeeping services, Adele's refers a housekeeper to the homeowner. The homeowner then personally informs the housekeeper of the services requested. If any contract for hire exists, it is the oral agreement wherein the homeowner, as the employer, requests and pays for the employee housekeeper's services.

An employer is defined as an individual or organization which pays wages. Utah Code Ann. § 35–4–22(h, i) (1988). When a housekeeping job is completed, the homeowner is free to pay the housekeeper directly or to make a check out to Adele's. At this point, Adele's merely functions as a check cashing service for the housekeepers, after first deducting its referral commission. If an employment relationship exists at all between Adele's and the housekeepers, the housekeepers employ Adele's and pay it wages in the form of referral commissions.

Upon our review of the record in the instant case, we conclude the facts do not reasonably and rationally support the Board's necessary conclusion that an employment relationship exists between Adele's and the housekeepers. The Board's decision is therefore reversed.

BILLINGS and JACKSON, JJ., concur.