*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2025 UT 17**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UNIVERSITY OF UTAH,
*Appellant,*

*v.*

JOHN TULLIS and AMELIA TULLIS,
individually and as parents and natural guardians
of P.T., a minor child,
*Appellees.*

No. 20230672
Heard October 25, 2024
Filed June 5, 2025

On Appeal of Interlocutory Order

Third District Court, Salt Lake County
The Honorable Adam T. Mow
No. 190907183

Attorneys*:

Carolyn S. Stevens, Amy F. Sorenson, Cameron J. Cutler, Annika
L. Jones, Salt Lake City, Derek J. Williams, Millcreek, LaMar F.
Jost, Clarissa M. Collier, Denver, Colo., for appellant

Christine Durham, Deno Himonas, Sarah Smith, Caitlin
McKelvie, Cate Vaden, Charles H. Thronson, Michael A. Worel,
Salt Lake City, Mark R. Yohalem, Los Angeles, Cal., for appellees

---

\* Additional attorneys: Derek E. Brown, Att'y Gen., Andrew
Dymek, Asst. Solic. Gen., Salt Lake City, for *amicus curiae* Office of
the Utah Attorney General, in support of appellant. Peter W.
Summerill, South Jordan, for *amicus curiae* Utah Association for
Justice, in support of appellees.

JUSTICE POHLMAN authored the opinion of the Court, in which JUSTICE PETERSEN, JUSTICE HAGEN, JUDGE MORTENSEN, and JUDGE OLIVER joined.

Having recused themselves, CHIEF JUSTICE DURRANT and ASSOCIATE CHIEF JUSTICE PEARCE do not participate herein; COURT OF APPEALS JUDGE DAVID N. MORTENSEN and COURT OF APPEALS JUDGE AMY J. OLIVER sat.

―――――――

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    In this medical malpractice case, the University of Utah (University) moved for partial summary judgment, requesting a ruling limiting the amount of damages that could be awarded against it, in accordance with the damages cap included in the 2017 version of the Governmental Immunity Act of Utah (GIA). *See* UTAH CODE § 63G-7-604(1)(a) (2017). But the district court denied the motion. It reasoned that our decision in *Condemarin v. University Hospital*, 775 P.2d 348 (Utah 1989), which held a different damages cap unconstitutional as applied to University Hospital, necessarily determined that the 2017 GIA's damages cap is unconstitutional as applied to the University.

¶2    We granted the University's petition for interlocutory review to decide whether *Condemarin* is controlling. As we explain below, we conclude that *Condemarin* does not control in this case, and we reverse and remand.

## BACKGROUND[1]

¶3    While undergoing surgery in July 2018, a four-year-old child (Child) had a massive air embolism. Child survived but suffered severe brain damage.

¶4    In 2019, Child and his parents, John and Amelia Tullis, sued Child's health care providers, including the University. The Tullises allege that the defendants were negligent in their medical and surgical care of Child, causing damages such as pain, anguish, past and future medical expenses, and the cost of past and future

―――――――――――――

[1] "On an appeal from a motion for summary judgment, we view the facts in the light most favorable to the non-moving party." *Cunningham v. Weber Cnty.*, 2022 UT 8, ¶ 3 n.1, 506 P.3d 575.

care and assistance. The Tullises' expert estimates that Child's future medical and care expenses will exceed $22 million.

¶5   The University sought to limit the Tullises' potential recovery in the district court. Citing the 2017 GIA's damages cap, the University moved for partial summary judgment declaring that its liability could not exceed $745,200. *See* UTAH CODE § 63G-7-604(1)(a) (2017) ("[S]ubject to Subsection (3), if a judgment for damages for personal injury against a governmental entity . . . exceeds $583,900 for one person in any one occurrence, the court shall reduce the judgment to that amount."); *see also id.* § 63G-7-604(3) (2017) ("The limitations of judgments established in Subsection (1) shall be adjusted according to the methodology set forth in Section 63G-7-605."); UTAH ADMIN. CODE R37-4-3(12) (setting the limitation of judgment amounts currently required by Utah Code subsection 63G-7-604(3) for incidents "occurring on or after July 1, 2018," at "$745,200 for one person in an occurrence").[2]

¶6   The Tullises opposed the motion, asserting that the 2017 GIA's damages cap is unconstitutional as applied to the University. In making this assertion, they did not try to independently demonstrate the unconstitutionality of the cap. Instead, they relied exclusively on caselaw, namely, this court's decision in *Condemarin v. University Hospital*, 775 P.2d 348 (Utah 1989). Alternatively, if *Condemarin* did not resolve the issue, they requested discovery on the applicability of the damages cap.

¶7   The University responded that *Condemarin* is not controlling because (1) it is a plurality decision with a narrow holding; (2) the legislature has repealed the statutes at issue in *Condemarin*[3] and has enacted a different damages cap, which "is

---

[2] Unless otherwise noted, we refer to the 2017 version of the GIA, which was in effect at the time of Child's injury in 2018. *See Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 3 n.2, 173 P.3d 166 (citing the GIA in effect at the time of the injury).

[3] Even before *Condemarin* was decided, the statutes at issue there were repealed and new provisions were enacted that increased the damages cap. *See* 775 P.2d at 348 n.1 (lead opinion) (explaining that the applicable damage limitations statutes were repealed in 1983). In 2004, the legislature repealed the GIA in its entirety and enacted a new governmental immunity act as part of a "comprehensive overhaul." *Mallory v. Brigham Young Univ.*, 2012 UT App 242, ¶ 34,

(continued . . .)

presumed to be constitutional"; and (3) "*Condemarin* is not good law because in it, the plurality reversed the traditional presumption of constitutionality . . . by requiring the proponent—not the opponent—of legislation to establish its constitutionality."

¶8 The district court agreed with the Tullises. It concluded that *Condemarin* "remains good law," so the University was not entitled to summary judgment as to the application of the 2017 GIA's damages cap. In its ruling, the court addressed and rejected all the University's arguments against *Condemarin*'s application.

¶9 First, the court acknowledged that *Condemarin* "is indeed a plurality opinion," but it noted that "while three justices disagreed as to *why* the damage cap was unconstitutional, a majority of the Supreme Court agreed that the damage cap in the GIA was unconstitutional." The district court concluded that although "a majority did not join Justice Durham's reasoning and will therefore not bind this Court, the holding, having been joined by a majority of the justices, is binding authority."

¶10 Second, the district court rejected the University's argument that there had been "a legislative overruling of *Condemarin*." The court explained that despite the repeal of the provision at issue in *Condemarin*, the legislature has "left the damage cap . . . largely intact." *Compare* UTAH CODE § 63-30-29(a) (1978) (repealed 1983); *id.* § 63-30-34 (1979) (repealed 1983), *with id.* § 63G-7-604(1)(a) (2017). Indeed, the district court ruled that "the holding of *Condemarin* remains good law notwithstanding that the [GIA] has been amended to increase the damage cap."

¶11 Third, and finally, the court rejected the argument that "*Condemarin* improperly changed the presumption of constitutionality of a statute." The court reasoned that "Utah [appellate] courts have recognized the continued viability of *Condemarin*"[4] and its holding, so "the holding in *Condemarin* binds this Court."

---

285 P.3d 1230, *rev'd on other grounds*, 2014 UT 27, ¶ 2, 332 P.3d 922; *see also* Governmental Immunity Act of Utah, ch. 267, § 47, 2004 Utah Laws 1171, 1214–15 (2004).

[4] In support, the district court cited *Judd v. Drezga*, 2004 UT 91, ¶ 17, 103 P.3d 135, in which we distinguished the quality-of-life damages cap at issue there from the GIA's damages cap that was "struck down in *Condemarin*." *Id.*

¶12 Having concluded that it was bound by *Condemarin*'s holding, the district court denied the University's motion regarding damages and refused to apply the 2017 GIA's cap in this case. The University then filed a petition for interlocutory review, which we granted.

## ISSUE AND STANDARD OF REVIEW

¶13 On interlocutory review, the University contends that the district court erroneously applied *Condemarin* to an amended GIA when it denied the University's motion for summary judgment. We review a district court's interpretation of our caselaw for correctness. *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 13, 423 P.3d 1150. Likewise, we "review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *Id.* ¶ 14 (cleaned up).

## ANALYSIS

¶14 The sole issue before us is whether *Condemarin v. University Hospital*, 775 P.2d 348 (Utah 1989), resolves whether the 2017 GIA's damages cap—codified at Utah Code section 63G-7-604(1)(a)—violates the Utah Constitution. The district court interpreted *Condemarin* as holding that the GIA damages cap at issue in this case is "unconstitutional as applied to the University." (Citing *Condemarin*, 775 P.2d at 366 (lead opinion).) And applying that holding, the court concluded that the University was not entitled to summary judgment that the cap would apply to limit the Tullises' recovery.

¶15 The University challenges the district court's decision, asserting that *Condemarin* has limited precedential value and that its "tightly circumscribed holding" regarding a prior version of the GIA is not binding here. In contrast, the Tullises rely on stare decisis, asserting that the court correctly followed *Condemarin* by "deeming the damages cap unconstitutional as applied in this case."

¶16 Under the doctrine of stare decisis, "the first decision by a court on a particular question of law governs later decisions by the same court." *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993); *see also Stare Decisis*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining stare decisis generally as "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation"). The doctrine "is a cornerstone of Anglo-American jurisprudence that is crucial to the predictability of the

law and the fairness of adjudication." *Rocky Mountain Hosp., LLC v. Mountain Classic Real Est., Inc.*, 2022 UT 44, ¶ 23, 523 P.3d 187 (cleaned up). "It requires us to extend a precedent to the conclusion mandated by its rationale." *Pleasant Grove City v. Terry*, 2020 UT 69, ¶ 41, 478 P.3d 1026 (cleaned up).

¶17 While these general principles are not in dispute, the parties disagree over the extent to which *Condemarin* is binding precedent in this case. It is, after all, a plurality opinion with a limited holding applied to a statute that has since been substantively amended. In other words, *Condemarin* is unique, and its application is not obvious.

¶18 To settle the parties' dispute, we begin by discussing *Condemarin* and its reach. We then discuss amendments to the GIA. Ultimately, for the reasons we explain, we conclude that *Condemarin*'s holding does not resolve whether the 2017 GIA's damages cap is unconstitutional as applied to the University.

I. *CONDEMARIN* IS A SPLINTERED DECISION WITH A LIMITED HOLDING

¶19 In *Condemarin v. University Hospital*, 775 P.2d 348 (Utah 1989), medical malpractice plaintiffs challenged the constitutionality of prior provisions of the GIA. Among other things, the plaintiffs challenged the constitutionality of the $100,000 cap imposed by sections 63-30-29 and -34 of the GIA. *Id.* at 348 & n.1 (lead opinion). The applicable version of section 63-30-29 stated, in relevant part, that every insurance policy purchased by a governmental entity under the chapter must provide that

> the insurance carrier shall pay on behalf of the insured governmental entity all . . . damages because of bodily injury, sickness or disease, including death resulting therefrom, sustained by any person, . . . subject to a limit, exclusive of interest and costs, of not less than $100,000 because of bodily injury to or death of one person in any one accident.

UTAH CODE § 63-30-29(a) (1978) (repealed 1983). And the applicable version of section 63-30-34 stated,

> If any judgment or award against a governmental entity . . . exceeds the minimum amounts for bodily injury . . . specified in section 63-30-29, the court shall reduce the amount of the judgment or award to a sum equal to the minimum requirements unless the governmental entity has secured insurance coverage

in excess of said minimum requirements in which event the court shall reduce the amount of the judgment or award to a sum equal to the applicable limits provided in the insurance policy.

*Id.* § 63-30-34 (1979) (repealed 1983).

¶20 Utah Code sections 63-30-29 and -34 are referred to together in *Condemarin* as the "recovery limits statutes," which "operated in conjunction" to "impose[] a $100,000 limit on the amount a person could claim against an uninsured government entity because of injury or death."[5] 775 P.2d at 348 n.1 (lead opinion).

¶21 Those statutes were deemed unconstitutional, but the decision was fractured. *Id.* at 366. Two justices dissented, and "[t]he three justices comprising the majority disagreed as to the correct state constitutional analysis to apply to the damage recovery statute." *McCorvey v. Utah State Dep't of Transp.*, 868 P.2d 41, 47 n.25 (Utah 1993) (plurality opinion). Indeed, those three justices each wrote an opinion.

¶22 Justice Durham, who authored the lead opinion, found the recovery limits statutes "wanting under both a due process and an equal protection analysis," *id.*; *see also Condemarin*, 775 P.2d at 348–66 (lead opinion), while Justices Zimmerman and Stewart each authored separate opinions expressing disparate views, *Condemarin*, 775 P.2d at 366–69 (Zimmerman, J., writing separately); *id.* at 369–75 (Stewart, J., writing separately). Justice Zimmerman agreed "in principle" with the due process parts of Justice Durham's opinion. *Id.* at 366–67 & n.1 (Zimmerman, J., writing separately). But he expressed "no opinion on the other points [she] discussed." *Id.* at 366. And Justice Stewart engaged in an extensive discussion about equal protection and based his conclusion there. *Id.* at 372–74 (Stewart, J., writing separately).

¶23 Thus, the case resulted in a narrow holding. Recognizing that Justices Zimmerman and Stewart each agreed with only pieces of her analysis, Justice Durham stated, "the holding of the Court is limited to the following: the recovery limits statutes are unconstitutional as applied to University Hospital." *Id.* at 366 (lead opinion).

---

[5] We suspect the term "uninsured" as used in this sentence also included the underinsured.

¶24 This holding, as limited as it is, set precedent. After all, it was agreed upon by a majority of the court. *Cf.* Channing J. Curtis, *Untwisting the* Marks *Rule and Plurality Precedent: Affirmances by Evenly Divided Courts and Theories of Holdings*, 59 GONZ. L. REV. 47, 57–58 (2024) ("For any action of a court to be precedential, it must have the majority vote of the court's members.").

¶25 But, as we've stated in the past, *Condemarin*'s precedential effect is limited. *See Parks v. Utah Transit Auth.*, 2002 UT 55, ¶ 11, 53 P.3d 473 (stating *Condemarin* has "limited precedential value" given its "narrow holding . . . as encapsulated in one sentence"); *see also DeBry v. Noble*, 889 P.2d 428, 434–35 (Utah 1995) (recognizing *Condemarin*'s limited application because the justices' separate analyses were not part of the holding). Because no rationale was adopted by a majority of the court, only the holding itself carries precedential weight. *See Lee v. Gaufin*, 867 P.2d 572, 581 (Utah 1993) ("[N]o one opinion [in *Condemarin*] stated the rationale of a majority."); *see also State v. Baugh*, 2024 UT 33, ¶ 29, 556 P.3d 35 ("Because the relevant portion of [the plurality opinion] did not represent the opinion of the majority of the court, the court of appeals could rely only on that case's outcome as binding precedent, not its reasoning."); *State v. Mohi*, 901 P.2d 991, 996 n.3 (Utah 1995) ("*Bell* is a plurality opinion; it does not establish precedent.").

II. *CONDEMARIN*'S HOLDING DOES NOT APPLY TO THE 2017 VERSION OF THE GIA

¶26 Given *Condemarin*'s holding that "the recovery limits statutes are unconstitutional as applied to University Hospital," *Condemarin v. Univ. Hosp.*, 775 P.2d 348, 366 (Utah 1989) (lead opinion), and given the Tullises' reliance on it, we must ask whether the statutes challenged here are the same as the recovery limits statutes ruled upon in *Condemarin*. The easy answer to that question is no.

¶27 The recovery limits statutes declared unconstitutional in *Condemarin* imposed a $100,000 flat cap on the amount a person could claim against a government entity because of injury or death, but they allowed recovery up to the amount of any insurance coverage. *See supra* ¶¶ 19–21. The damages cap at issue here is different in both operation and amount. The 2017 GIA sets a higher limit regardless of insurance coverage, while also providing a mechanism to adjust for inflation. *See* UTAH CODE § 63G-7-

604(1)(a), (3) (2017). Thus, as applied here, the University contends the GIA caps its liability at $745,200.[6]

¶28 The Tullises acknowledge these differences and concede that the statutes struck down in *Condemarin* are not the same as the statute at issue here. Yet, they argue, the differences are not so significant as to render the *Condemarin* holding nonbinding. We disagree.

¶29 The *Condemarin* court concluded that the recovery limits statutes imposing a $100,000 flat cap on medical malpractice damages were "unconstitutional as applied to University Hospital." 775 P.2d at 366. That is the full extent of its holding. Given that limitation, it is not automatically applicable to a different statute with a different damages cap. Just as the holding in one case doesn't automatically apply to a case with different facts, this holding doesn't automatically apply to a statute with different terms.

¶30 This conclusion may seem overly simple. But because *Condemarin* left us no majority rationale to apply, its reach is necessarily limited. That is, there is no rationale to test the revised damages cap against. For instance, we cannot analyze whether the differences between the statutes alter the due process analysis because a majority of the court did not agree that the recovery limits statutes violated due process. Without a legal framework to apply, we cannot declare that the revised cap is unconstitutional simply because another version of the statute was.[7]

¶31 Further, even if there were a majority rationale to apply, we would still be required to apply it to a revised statute before

---

[6] The University also suggests another difference—that the 2017 GIA "provides individuals whose damages have been capped with the ability to present an 'excess claim'—i.e., the amount exceeding the cap—to a board of examiners." (Citing UTAH CODE §§ 63G-7-701(3), 63G-9-302.5(2) (2024).) The University asserts that this Board of Examiners "procedure for the presentation of claims above the cap for payment" was not considered in *Condemarin*.

[7] Moreover, if the situation were reversed and our precedent deemed an earlier version of the statute constitutionally sound, it would be problematic if we couldn't look at the statute again, "because it may in fact be the amendments which render the statute troublesome." *See State v. Mohi*, 901 P.2d 991, 996 n.3 (Utah 1995).

declaring that statute unconstitutional. That is how precedent works. We take principles of law decided in one case and consider whether those principles mandate a certain result under a different set of facts. *See Pleasant Grove City v. Terry*, 2020 UT 69, ¶ 41, 478 P.3d 1026 (explaining stare decisis "requires us to extend a precedent to the conclusion mandated by its rationale" (cleaned up)). For precedent to be controlling, a party must demonstrate either that the material facts are the same or that the rationale, as applied to different facts, demands the same result.

III. THE DISTRICT COURT ERRED IN CONCLUDING THAT THE HOLDING IN *CONDEMARIN* CONTROLS IN THIS CASE

¶32   We agree with the University that the district court erred in relying on *Condemarin*'s holding when it denied the University's motion to cap damages. As explained, relying on *Condemarin*'s holding, without more, is not enough to declare the 2017 GIA's damages cap unconstitutional.

¶33  We stop short, however, of directing the district court to grant the University's motion. In opposing that motion, the Tullises requested discovery on the applicability of the damages cap in the event *Condemarin* did not resolve the issue. Because the district court denied the University's motion based on *Condemarin*, the court did not reach this request. Accordingly, we are not in the position to consider whether that request should be granted, and we leave it for resolution in the district court.

## CONCLUSION

¶34  Although we do not decide whether the district court should have granted the University's motion for partial summary judgment on damages, we conclude that *Condemarin*'s holding does not control in this case, and we reverse and remand the matter for further proceedings.